May it please the Court? Can you speak up a little? Move that microphone. There we go. Yeah. There you go. May it please the Court? Good afternoon, Your Honors. Cherise Pratt for the government. All right. Thank you. The question before the Court is whether the evidence in the record permitted the agency to reach the decision that it did in denying Mr. Chau's petition for marriage fraud. The agency identified substantial and probative evidence that Dinh married Duran for the purpose of obtaining an immigration benefit and, on the date of her marriage, had no intention to share a life with Duran. The agency did not just look at Duran's conviction for marriage fraud, where he admitted that the petition he filed was not for a bona fide marriage. The agency did not just look at Dinh's affidavits, where she admitted that she was seeking an immigration benefit so that she could get government assistance by getting the government assistance to reduce her tuition. So did she actually get any benefits? It doesn't matter whether she actually received any benefits. The issue is whether she sought to be accorded immigration benefits, and clearly she did. What immigration benefits? Does the case rest on an application for tuition benefits, or is it enough that she filed an I-130 application? She married Duran. No, I understand. My question is, are the benefits that you're premising the marriage fraud bar on? I had thought the benefits you were arguing was that she sought to get permanent residency on the basis of the marriage. Isn't that enough to trigger the marriage fraud? So she doesn't have to apply for monetary benefits? She doesn't have to apply for anything else. It's the fact that she sought to be accorded an immigration benefit. Can I ask you, there's no question in this case, at least before us, about the legitimacy of the third marriage, correct? Based on the evidence, there doesn't appear to be a question. Well, the government never contended in the agency that the third marriage was fraudulent, rather that the second marriage was fraudulent, correct? That's correct. So the district court concluded that the government hadn't presented substantial evidence that the second marriage was fraudulent. What do you think the district court's ruling to that rests on? Well, the district court substituted his judgment for the agency's. Under the Administrative Procedure Act, the agency is entitled to deference unless the evidence, unless the record, compels a contrary conclusion. So what was the evidence? The evidence that they looked at, aside from the conviction and her affidavit, was the fact that... The conviction of the husband that you're saying wasn't really sort of her sham husband. Exactly. So the agency examined the evidence against behavior and conduct before the marriage, on the date of the marriage, and after the marriage. Before the marriage, she admits that she needed to find a United States citizen so that she could obtain federal assistance for her tuition reduction. So how did the first marriage go? What were the facts of the first marriage? The first marriage, she married Jason Prince, and a little over two weeks later, she received some divorce papers in the mail. She didn't live with him. Again, she paid this marriage broker $12,000, met him, married him. She traveled from where she was in Las Vegas to Utah, married him, and then came back. Does the first marriage have any relevance to this case? Is it a fact that one could consider in determining whether the second marriage was a sham? Because no benefits were sought in connection with the first marriage, right? None that we know of. So my question is, do the facts of the first marriage, are they probative about whether the second marriage was fraudulent? The agency looks at the whole record. I understand. So my question is... I don't think you need to really focus on the first marriage. You may not have to focus on it. My question is, does it help you or hurt you? Well, I think it helps because of the fact that she was looking for a United States citizen, clearly, in quick succession, and she admits that the purpose for finding this U.S. citizen was so that she could seek an immigration benefit, so that she could obtain federal assistance for her tuition. That was always her end purpose. There's no question about that. And I understand your argument that you have plenty of evidence aside from the conviction. Tell me why the conviction is probative of her intent. Well, normally when people marry, and one person is marrying to help the other person enter the country... Well, what are the elements of the conviction of the husband? Well, he was convicted of aiding and abetting the illegal entry. But in the conviction papers, what it says was he admitted that he filed the petition and that the marriage wasn't bona fide. The charge was a little bit different. She was actually in the United States legally on a student visa, a non-immigrant student visa. So he didn't actually aid her into coming into the United States. Isn't the answer to the question that it takes two to tango and here one of them wasn't tangoing, so maybe the other one's not tangoing as well. I mean that's your point, right? And what I'm saying is that if one guy admits, yeah, I got married, but not really, that led at least some light in the idea that maybe the person he's marrying also wasn't really getting married either. I agree. And then you look at her behavior and the fact that she went there, she married him quickly. She had time to sign immigration papers, but she didn't have time to take wedding photos, to send to her mom, to show the newspaper. Because I understand the evidence is she left town that day, never had any contact with this gentleman again. No. She says that she tried to call him, but she didn't submit any evidence of emails or telephone records showing that she tried to contact him. Her behavior is not the behavior of someone who married with the intention of spending their life with another person and then... Let's say if the district judge had been the immigration judge, would you be in a different position? With all the evidence that was presented, if the immigration judge had found that she didn't violate anything here, then would that make a difference as to what the district judge was looking at? What's the standard of review for the district judge? Does the district judge hear the evidence or what does the district judge do in the procedure? You said it's APA review. Right. Okay, so there are three different forms. There's the criminal prosecution where you have to prove beyond a reasonable doubt. Then there's the immigration court where... I guess the easy answer is that the immigration judge, had the immigration judge rejected your theory on the case, you would have a much harder rock to push uphill than with the district judge who's reviewing under a deferential lens. Isn't that the answer? Well, the immigration judge doesn't have jurisdiction over visa petitions, and the immigration judge did not have all of the evidence that the agency had before it. In an immigration court proceeding, the immigration judge is the adjudicator, and the agency is an adversarial relationship. The agency and ZIN are parties. The agency is seeking to take away an immigration judge. Well, what Judge Callahan is asking, I think, is don't we have to defer as a judiciary to the immigration judge's factual findings? No, not to the immigration judge's factual findings. Exactly. So really, for you, this case turns on standard review. In many ways, that's your best argument here is just the standard review, correct? Exactly. And no reasonable fact finder could look at this record and say that the decision should be reversed. If that were the case... No, that's not the standard. The standard is whether or not a reasonable fact finder could find as the agency did, correct? No, the standard is whether the evidence compels a difference. That's right, which is to say that a reasonable person could have found the way the agency did. A court can only reverse it if no reasonable person could. Exactly. Let me ask you a question that relates to the second part of the test. So let's assume we have a fraudulent marriage. It has to be done for the purpose of obtaining benefits, correct? Thought to be accorded. Right. Okay. Now, in this case, as I understand it, the petitioner, Ms. Dinh, says, I signed these forms, but I never authorized their submission or something like that. Is there any agency finding on that issue? She knowingly and voluntarily signed those immigration papers. Right, we agree. But you can say yes or no to that. We agree. She knowingly and voluntarily signed the papers. Her contention is that I didn't intend for them to be submitted. I called somebody and said don't submit them. That could be rejected, as a matter of fact, by the agency. I don't have any doubt that it could. My question is, was it? Is there anything in the agency decision that says you said that, but we don't believe you? No, there isn't. So what do we do with that? Isn't there a requirement that she seek the benefits? So the mere fact that you signed a form, is that enough? It has to be submitted, doesn't it? No. No, it's the mere fact that she had that intention when she signed those forms. She had the intention. So let me change the facts. She had that intention when she signed the forms, and she said to the marriage broker or to Mr. Duran, hold on to them. Put them in your pocket. I'll let you know when and if I want you to file them. Would there be a 201 bar under those circumstances? 204C. 204C. That's not the situation we have. I know. I know. It's a hypothetical. You've got law students out there that have to answer hypotheticals all the time, so they want to hear you answer it. You have to submit them in order for the bar to come into effect, right? You don't have to submit it. You just have to sign it. Just have to sign it. So the answer to his question would be yes. If you pocket the forms, no difference. I think that she's signing it and saying, hold on, I'll let you know when I want you to file them. Or if I want you to file them. Well, then, you know what? If that was an issue, then she wouldn't sign the immigration forms. No, but again, with all respect, you don't get to change the hypotheticals. So my question is whether or not the bar is based on the eventual submission of the forms or whether it's based on the mere signing of the forms. It's the mere signing of the forms. The government's position is that once somebody signs those forms, if they're involved in a fraudulent marriage, whether or not those forms are ever submitted, the marriage bar applies. Correct. Okay. All right. Would you like to save the balance of your time for rebuttal? Yes. Thank you, Your Honor. Thank you. Xavier Gonzalez on behalf of the plaintiff appellee. Ms. Pratt. Good afternoon. Good afternoon. Your client doesn't appear to, she marries often, but it doesn't appear to be for love. Well, it doesn't have to be. That's the point.  Well, tell us about that. There can be alternative reasons to marry. There's no cookie-cutter description of a marriage that anyone has to meet because marriages are those kinds of relationships that have a myriad of faces. Well, but the face of this one, so the government, the agency finds that this was a fraudulent marriage. And the question is whether there's enough evidence from which the agency could reach that conclusion. The question is whether there is substantial and probative evidence. Okay. So here's the evidence that just bowls me over. She never met the husband until the day of the marriage. She meets him in the early part of the day, marries him in the afternoon, leaves town and never sees him again. They never live together. They have no property together. They have no further communication, although she can intend she tried to communicate with him. Not enough to show that the marriage was fraudulent. You're looking at this like it's a typical marriage. It isn't. So that's where. Well, I know it's not. That's where. And the law is that it doesn't have to be. There's nothing typical about marriage. No, I understand. And it's a great argument. It's a great argument that you make. My question is, can't a rational finder of fact look at these facts and say, gee, Mr. Ho has done a great job trying to explain away these facts, but there are facts nonetheless. Yeah, I don't have to explain away anything. And here's why. She married in accordance with a Vietnamese tradition that allows her to use a matchmaker picked by her mother to find her husband. By the way, there were 600 other Vietnamese people in Utah that were victimized the same way by the same two people, by Mr. Ho, the matchmaker, and something like $1.2 million in a judgment against him for having duped 600 Vietnamese nationals to marry U.S. citizens. I imagine that that's the same thing happened. In that, what's instructive about that, not a single Vietnamese national was charged. My client was never charged in that fraud, even though Joey Durant admitted he engaged in fraud. Let me interrupt you for a second. It's because it's a great closing argument. It's a great factual argument. If I were the agency, I might buy it, and you might have more. I can explain to you why you should buy it. My question is, must I buy it? Must any finder of fact look at these facts and say, no, let me finish the way this works. Sorry. Must any finder of fact look at these facts and say the only possible conclusion was this was a bona fide marriage? Because that's what you've got to show us. Let me explain to you how we get there. She pays $12,000 to a matchmaker consistent with 600 other Vietnamese nationals who did the same thing to arrange a marriage. She did it twice. Judge Gordon was insightful enough to say, look, there's no such thing as a cookie-cutter marriage. This can happen in the Vietnamese tradition. It did apparently well enough to dupe 600 other people that were also victimized. That's number one. Number two, she was in the middle of her semester in school, so she only had enough time to follow her mother's instructions, go to Utah, marry the guy that she designated, and then go back to school. What's instructive about all this is that she was enrolled in school, and there was evidence of that. She was completing her school at CSN in Las Vegas, Nevada. As soon as the semester ended, she started calling her prospective husband, making arrangements. She had already, in November, after marrying Duran, she had already sent in transfer notices. She's already, what's the standard? Here's the language that we have to establish to determine whether or not this is a fraudulent marriage. The primary test for a bona fide marriage is whether at the inception of the marriage, the bride and groom intended to establish a life together. That's what we have to look at. The way you have to view this marriage is that in a very short period of time, she begins to realize that she has the bona fide intent to rely upon the marriage, move in with her husband, transfer her school to Utah and go to school there, and for some reason, he's not returning calls. He's not responding to her, hey, I want to come in and move with you. I'm getting ready to go. Semester's over. To the point she gets so frustrated in January of 2005 that she tells her mother, I can't do this. This is the quintessential fact that establishes that it is bona fide because she's not prepared to go forward unless they're establishing a life together, and she makes that clear to her mother. Mother gives her permission, and guess what else happens? She instructs these people where all she did was sign the form and not date it. Don't file anything. I'm not going forward. And what else tells us that she had a bona fide intent? When she realizes that Joey Duran is not going forward, and by the way, she doesn't know for two years, four years, that he's actually engaged in fraud and that the matchmaker is also engaged in fraud. She doesn't realize this until. Counsel, what happened to Mr. Hoa, the fixer? He got convicted. Was restitution ordered in the case? There were 73 victims, $1.2 million in a judgment from the proceeds from all these arranged marriages that were fraudulent, and not a single Vietnamese national was prosecuted. Right, but my question is was your client listed as one of the victims? I can't say that for sure. In fact, I looked at that this morning to see if I could. There were 73 separate counts of marriage fraud. So I looked through it as quickly as I could. I didn't see her specifically, but it doesn't matter. It is consistent with the fact that she's duped. Okay, we can hear fine. I couldn't hear counsel for the appellant very well, but I can hear you fine. I'm going to take it down a notch. Dial back, dial back. So, counsel, you've been saying that your client was a victim in this case. Well, if there was a criminal conviction under the federal charge, I understand that. If she's a victim, then she would be entitled to restitution, and there's a restitution order that's entered by the district court that lists every single person and how much money they're owed. I take it she was not on that list. I have no idea. I didn't check it. I think it's irrelevant. The point is, did she have a bona fide intent to create a life together with this guy? And what tells us that she did is the fact that as soon as she realized on the other side of it that this guy is not cooperating with her in a way that would allow her to make a life with him, she withdraws and she meets another guy in January. She instructs them not to file the application. And by the way, she's alleged, and nobody's ever disputed it, that date that's on the I-45 is not her signature. It's dated January the 5th. How many marriages has she had? Three. Three. And on all three marriages, did she sign immigration papers on her wedding day? No, she did not. Okay. And Mr. Prince, in the first instance, that's a push because she never did anything with that marriage, and it ended within two weeks. So the government's position is that her signing of the I-130 application, and I think it's an I-44 or whatever the other one is, is itself enough to establish that she sought benefits on the basis of the marriage. Assume for the moment that the marriage is fraudulent. I don't want to hear the argument about— That's nonsense because she cites no single case for that proposition. Okay. So what is—tell me what the standard is then. In fact, Judge Gordon said there is no case law. You may have to make it in this case. You may have to decide is it enough for her to sign a form, put it in her pocket, and say don't file it? Well, now let me ask the next question. I hate to interrupt you, but I'm going to. She signs the form. We all agree on that. She contends I told people not to file it. It was filed. We all agree it was filed. I will object to that point slightly, and I'll tell you why in a moment. Well, somebody—it arrived at the place where one gets these applications. That's true. You're a great lawyer, but let's use the word filed in its broad sense. What does the—in your view, what does the agency have to find with respect to that? In other words, the agency finding is that she sought benefits on the basis of this marriage. They received an application with her signature on it. Must they prove more, or is that enough? No, that's not enough, and let me tell you— What must—no, answer my question. What more must they prove? So here's what I think they have to prove if she intended to rely upon the marriage for the purpose of obtaining an immigration benefit. Get your biometrics taken. That's fundamental. She never had her biometrics taken. Apply for work authorization. She never applied for that. So tell me where in the statutes are these requirements? A year later, this application is rejected. I can tell you after practicing immigration law for 35 years the reason why. There is no evidence of any relationship. It was never submitted. So she did not cooperate in an effort to establish this marriage to be a bona fide one when she had suspicions herself that this guy wasn't following through. Well, but no, I'm trying to ask a different question. I understand the point you want to make. My question is, is it your position that because the application, when it was submitted, if not filed, was incomplete because it didn't have biometrics and other things, it therefore doesn't qualify as seeking benefits? I want to understand what your legal position is. What is required when an application arrives at the government's desk? In this case, two more things are determinative of whether that effort was made. Number one, she divorced him when the application was pending. When the divorce happened, it's done. There's nothing left. There's nothing to adjudicate. It's done, and it happened before they rejected it the next year. So the second fact is they never actually accepted it. It was never feed in. It was never processed for adjudication. It's like it never happened. When the USCIS rejects an application, you're like you've never done anything. So we're here to talk about what is the legal standard for having submitted an application to be accorded a lawful status. Is that really where we're at in this case? Not at all. In fact, what the evidence shows is she ran away from this relation, never intended to rely upon it. What else tells us that? When she marries Chow two years later, files an application in 2008, in the application she writes on there, as she's required to, have you ever submitted an application for permanent residence? She says no. Now, this is before she's told that Joey Duran was convicted of marital fraud in her marriage. She doesn't even know that. She thinks that these people followed her instructions and never filed it because when she says in the I-485 several years later, before she's aware of any of this, that she never filed for an immigration benefit, she believed that. It was true in her mind. So if you add all this stuff together, what you're left with is, as Judge Gordon pointed out, is there is no substantial evidence in the record of marital fraud. In fact, the evidence suggests just the opposite. As soon as she realized that this marriage wasn't going to work, she withdrew from the marriage as quickly as she could. All right, but inherent to that, the judge would have to make a credibility of call of who the judge believed and that he believed your client. But in the prior proceeding, your client was not believed and all of those circumstances were looked at differently. The standard of review then becomes problematic for you because the district court doesn't get to have a trial de novo under the standard of review. I disagree with that analysis about what happened in the lower court because what Judge Gordon did, he didn't do a credibility assessment. Well, if they had believed her previously, they wouldn't have found that she sought benefits as a result of a sham relationship. He didn't do a credibility assessment. He did a fact-weighing analysis. Can he weigh facts? Well, no, no. This is an administrative review. Can the district court weigh the facts in the record on an administrative review or is the district court limited to saying whether or not the facts taken in the light most favorable to the result below can support the agency determination? However you cut it. Well, hold on. If I cut it one way, you lose. If I cut it the other way, you win. So don't tell me however I cut it. I don't think so because ultimately he has to make this determination. Is the agency's finding cannot be overturned unless the evidence presented to the agency compels a reasonable finder of fact to reach a contrary result And that, yes, compels. Which means that no reasonable person could come out differently. The only thing he can look at is facts. So however you cut it, he's looking at the facts. Let me return to Judge Callahan's question. Your client testified at the agency proceeding, did she not? She did not testify. She was in an interview that was conducted that lasted two minutes. And the reason why is in both interviews, the only thing they asked her was, was Joey Durant convicted of marital fraud? Oh, it's a fraudulent marriage? It's a fraudulent marriage for your purpose, too. Oh, he ignores the language in 204C. We don't care what the U.S. citizen intended. It's what did the alien intend. And there can be different intents in a marriage, as we all know, if you've lived any kind of a life. Marriages have that unique quality where one spouse may feel one way about something and the other feels completely different. Mine thought she was going to get a guy with great hair. Good point. Maybe she was looking for that. I don't know. All right. We don't have any additional questions, so you have three seconds to wrap up. So what I'm going to say is when you look at the evidence, the evidence shows you not only is it a bona fide marital intent at the outset, but as soon as you realize it wasn't, whoo, she's backpedaling out of this relationship. She never asked for it to be submitted or filed. She divorced while the application was pending, never followed through in the process, and in the following year it was completely rejected by USCIS. So there was never an application submitted. She never sought to be accorded any status, and it certainly was her intent at the outset to have a bona fide marital relationship. All right. Thank you. I think that's too much time there. All right. Go ahead. Lynn cannot cherry pick which of the traditional Vietnamese customs she wants the court to apply and which ones she doesn't. She can't say, oh, it was traditional, I followed my mother's orders, but then not follow any of the pomp and circumstance. Contrast the marriage that she had with Duran with the marriage she had with Chau, the courtship, the photos, the first time they met. Let's assume for a moment that the record supports the notion that the marriage wasn't a bona fide marriage. I want you to focus on the seeking benefits because I'm still not sure I understand the government's position. Am I seeking benefits when I sign a form but don't submit it? Yes. Tell me. It's evidence that you're seeking benefits. It's evidence that was looked at, but you're kind of saying like that's the law, that the law says that it's evidence that a person is seeking benefits, and that's what you had to prove below. Let me follow up on Judge Callahan's question because here's what troubles me. What if, as a matter of fact, it was stipulated in this case? Hypothetical. You don't have to tell me it's not the facts in this case. What if, as a matter of fact, it was stipulated that she signed the forms but did not authorize their filing because she wasn't sure she should file them and that the marriage broker or her husband on his own filed the forms? Would she then be seeking benefits on the basis of that fraudulent marriage? Yes, because she was looking for a United States citizen so that she could. . . No, but I'm asking you about I know what her motivation was. The statutory requirement of the 204 is not only to be a fraudulent marriage but to make it shorthand, government benefits be sought on the basis of that marriage, right? Right. Okay, there's not a 204 bar if you just engage in a fraudulent marriage. She can go out and marry 125 people in a row as long as she doesn't seek some adjustment of status or some benefit on the basis of it, right? Right. Okay. She hasn't filed a petition before USCIS. Right. So she has to file something with the government seeking benefits, does she not? Well, the Marriage Fraud Amendments Act in 1986, they changed the law. Prior to that, you had to actually have filed it. Now it's just sought to be accorded. Sought to be accorded. Okay, you have to seek to be accorded. Or attempted. Or attempt to seek to be accorded. Okay, so my question is still the same. Under that, she signs these forms and says, I'm not sure I want to file them. Hold on to them and wait for my instructions. Is she subject to the marriage bar? I would say yes. I'm going to tell you, though, that I think a judge at that point could have believed her and said, I don't think you ever intended to seek benefits. And if a judge below or if there had been fact-finding below to that effect, you couldn't make the argument that you're making here. But she herself says, oh, I tried to call it off. I told them not to. I understand. That might not be credible. So this leads to the question I've really been trying to focus on. Doesn't the agency have to make a finding on that, or is it their finding that she sought benefits enough to reject Mr. Does the agency have to make a specific finding on that, or is it finding that she sought benefits, an implicit rejection of her claim? I think the agency has to look at the whole record. I'm not asking what they have to look at. I'm asking whether or not they have to make a finding. There is no finding here, as close as I can tell, that responds to his contention, except the ultimate finding that she sought benefits. And so my question is, is that enough or do you need more? I think the agency identifies substantial and probative evidence, and the petitioner has the burden to reflect, and she didn't. And that was one of the pieces of evidence they identified, as substantial and probative. So your answer to my question is they don't need to make a specific finding with respect to her intent? I'm not sure. And if you want supplemental briefing. No, I just want to know, I want to understand what your position is. His position, Mr. Gonzalez's position is she never meant for this stuff to be filed, and she put in a lot of evidence about that. That evidence might not be believed. I'll start with that assumption. The finder of fact might say, I don't believe a word she said. My only question is whether the agency needs to address that specifically or whether or not its ultimate finding imposing the fraud bar is enough. I don't believe the agency needs to address that specifically. Thank you for your argument. Unless either of my colleagues have additional questions, this matter will stand submitted.
judges: Callahan, Hurwitz, Owens